FILED'08 SEP 23 14:32usdc-orp

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MTEC, LLC, a Nevada limited liability company, | CV. 08-563-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| WILLIAM NASH, individually and d/b/a SUPER SOUNDPROOFING COMPANY | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Findings and Recommendation*

Plaintiff MTEC, LLC ("MTEC") brings suit in federal court against defendant William Nash ("Nash") alleging patent infringement, trademark infringement, and unfair competition. This court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1338(a).

Presently before the court are the motions filed by Nash to transfer venue to the Southern District of California, quash and strike summons, and for sanctions. For the reasons set forth below,

Page -1- FINDINGS AND RECOMMENDATION                                    *{WEP}*

Nash's motion to transfer venue should be granted, while Nash's motions to quash and strike summons and for sanctions should be denied.

*Background*

Viewed in the light most favorable to the plaintiff[1], the facts are as follows. Plaintiff MTEC, a Nevada corporation, is the owner of patent and trademark rights in the United States covering sound isolation devices ("covered products"). P.A.C. International, Inc. ("PAC"), a separate company, was the predecessor in interest to these patent and trademark rights. PAC was an Oregon corporation, but is now dissolved. The covered products were manufactured for PAC in Australia by Sound Isolation Systems Proprietary Limited.

From August 1, 2001 to December 18, 2003, defendant Nash had a distributorship agreement with PAC to distribute the covered products in the United States. Nash distributed the covered products under the name Super Soundproofing Company. Nash is a resident of Vista, California, and he maintains an office in San Marcos, California. Under the distribution agreement, Nash purchased the covered products "F.O.B. Oregon," signifying that the transfer of sale occurred in Oregon, and Nash was responsible for shipping the products to California.

In late 2006, Elzo Gernhart ("Gernhart"), then working for PAC, became aware that Nash was importing the covered products through another distributor in Australia, allegedly in violation of PAC's intellectual property rights. Gernhart contacted Nash to resolve the matter. In response, Nash sent a letter on December 19, 2006, agreeing to stop using the marks and covered products. In July 2007, MTEC became the successor in interest to PAC in the patents and trademarks at issue

---

[1]On a motion for improper venue under Rule 12(b)(3), the court must draw all reasonable inferences in favor of the non-moving party, and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider National, Inc.*, 363 F.3d 1133, 1139 (9th Cir. 2004).

in this suit, and Gernhart became a managing member of MTEC.  In December 2007, Gernhart became aware that Nash was again engaging in activity that allegedly violated MTEC's intellectual property rights.  MTEC and Nash attempted to resolve the matter, but the talks were unsuccessful.

On May 8, 2008, MTEC filed a complaint against William Nash, individually and doing business as Super Soundproofing Company, in the United States District Court for the District of Oregon.  The complaint alleged patent infringement, trademark infringement, and unfair competition.

On May 9, 2008, MTEC sent a copy of the summons and complaint and a waiver of service to Nash.  In response, Nash sent a letter to MTEC's attorney on June 11, 2008, refusing to waive service.  Consequently, MTEC hired a professional process server to serve the summons and complaint on Nash.  On three separate days, a process server attempted to serve Nash at his business address in San Marcos, California, but was unsuccessful.  On the third day, June 17, 2008, the process server left a copy of the summons and complaint with a woman in Nash's office.  The following day, the process server mailed a copy of the summons and complaint by first class mail with postage prepaid to Nash's business address.

Consequently, Nash filed a motion to transfer venue to the Southern District of California, a motion to quash and strike summons, and a motion for sanctions.  Nash mailed a copy of the motions to MTEC's attorneys on July 16, 2008, and filed the motions with the court on July 22, 2008.

*Discussion*

I.    Personal Jurisdiction

This court has personal jurisdiction over Nash, because Nash failed to properly raise the issue

Page -3- FINDINGS AND RECOMMENDATION                                    *{WEP}*

in his motion to transfer venue.  The defense of lack of personal jurisdiction must be affirmatively raised under Federal Rule of Civil Procedure ("Rule") 12(b)(2).  FED. R. CIV. PRO. 12(b)(2).  Rule 12(h)(1) further provides:  "A party waives any defense listed in Rule 12(b)(2)-(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2)."  FED. R. CIV. P. 12(h)(1).  Rule 12(g)(2) provides "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  FED. R. CIV. P. 12(g)(2).  Thus, under Rule 12, if a party does not raise the defense of lack of personal jurisdiction in its first response before the court, the party loses its chance to raise the defense later.  *See American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106 (9th Cir. 2000) (holding that defendant who previously filed a motion for improper service of process waived the right to contest personal jurisdiction in a subsequent filing).  Additionally, a motion for improper service of process under Rule 12(b)(5) is a separate and distinct issue from a motion for lack of personal jurisdiction, which is raised under Rule 12(b)(2).  *Id.* at 1107.

In *American Ass'n*, defendant Hayhurst, acting pro se, filed a motion to dismiss and asserted the defense of improper service under Rule 12(b)(5).  *Id.*  After that motion was denied, Hayhurst appealed and alleged that the district court did not have personal jurisdiction over him.  *Id.* at 1106.  The Ninth Circuit held that Hayhurst had waived the defense of lack of personal jurisdiction, because he did not raise it at the time he made a motion for improper service.  *Id.* at 1108.  The court also held that Hayhurst did not maintain the personal jurisdiction defense by virtue of being pro se, stating "a pro se litigant is not excused from knowing the most basic pleading requirements."  *Id.* at 1107-08.  Similarly, Nash's motion to transfer venue and claim of insufficient service of process raise separate and distinct issues under Rule 12 and do not serve to raise the issue of personal jurisdiction.

Also, Nash is not excused from the requirements of Rule 12 by virtue of being a pro se defendant; indeed a review of Nash's pleadings in this case shows that he possesses a knowledge of the law and of structuring legal arguments such as to approximate the competency of the average practitioner. In sum, Nash has waived his right to dispute personal jurisdiction by not properly raising the issue in his first motion before the court.  Therefore, this court has personal jurisdiction over Nash.

II.     Service of Process

Service of process upon Nash was proper.  Federal Rule of Civil Procedure 4(e)(1) provides that an individual defendant may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1).  In this case, the case was filed in Oregon, and service was attempted in California.  Thus, service is proper if it conformed with the state rules of either Oregon or California.  The burden is on the plaintiff to demonstrate that proper service was performed. *U.S. v. Ziegler Bolt and Parts Co.*, 111 F.3d 878, 880 (Fed. Cir. 1997).  Because the motion is being decided without an evidentiary hearing, the plaintiff need only make a prima facie showing that service was proper. *Id.*  A signed return of service is considered prima facie evidence of valid service, which can only be overcome by strong and convincing evidence. *S.E.C. v. Internet Solutions for Business Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007).

In this case, service was proper under Oregon rules.  Oregon Rule of Civil Procedure ("ORCP") 7D(2)(c) allows for office service. OR. R. CIV. P. 7D(2)(c).  It states, in relevant part:

> If the person to be served maintains an office for the conduct of business, office service may be made by leaving true copies of the summons and the complaint at such office during normal working hours with the person who is apparently in charge. Where office service is used, the plaintiff, as soon as reasonably possible, shall cause to be mailed, by first class mail, true copies of the summons and the complaint to the

defendant at defendant's dwelling house or usual place of abode or defendant's place
of business . . . .

OR. R. CIV. P. 7D(2)(c).

Here, MTEC submitted an affidavit of service, signed by the process server, indicating that
on June 17, 2008, the process server left copies[2] of the summons and complaint with a woman in
Nash's office who was apparently in charge.  MTEC also submitted a signed affidavit of service by
mail, indicating that the process server mailed copies of the summons and complaint to Nash's
business address on June 18, 2008.

Nash admits that MTEC did leave copies of the summons and the complaint at Nash's place
of business, but he contends that he never received copies of the summons and complaint by mail.
However, a strict reading of the rule shows that while a mailing is required, actual receipt of the
mailing is not.  *See McDonald v. Mabee*, 243 U.S. 90, 92 (1917) (stating that if a proper method of
service is followed, due process is satisfied even if the defendant does not receive actual notice).
MTEC's signed affidavits of service are enough to establish a prima facie case of proper service.
Nash has not presented clear and convincing evidence that proper service was not performed.
Therefore, service was proper under Oregon rules.

Similarly, service was proper under California rules.   Office service in California is
authorized by California Code of Civil Procedure ("CCCP") § 415.20(a).  CAL. CODE CIV. P. §
415.20(a).  It states, in relevant part:

---

[2]Nash argues that he received the original summons rather than a "true copy" as the rule
specifies.  The requirement that a true copy be served is to ensure that the served party receives
the level of notice that the original summons would provide.  By receiving the original summons
rather than a true copy of it, Nash received the level of notice the rule contemplates.

> [A] summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

CAL. CODE CIV. P. § 415.20(a). The requirements of office service under CCCP § 415.20(a) are essentially the same as under ORCP 7D(2)(c). CCCP § 415.20(a) requires that the plaintiff leave a copy of the summons and complaint at the defendant's office with a person who is apparently in charge, and thereafter mail a copy of the summons and complaint to the office address. CAL. CODE CIV. P. § 415.20(a). In this case, MTEC left a copy of the summons and complaint with a woman in Nash's office who was apparently in charge, and thereafter mailed a copy of the documents to Nash's office address. Therefore, service was proper under California rules.

Furthermore, even if there were a defect in service of process, the service would still be valid under Oregon rules because Nash had actual notice of the suit. Under ORCP 7G, any defect in service does not affect the validity of service "if the court determines that the defendant received actual notice of the substance and pendency of the action." OR. R. CIV. P. 7G. In this case, Nash referenced the complaint and clearly was aware of the pendency of the suit against him. *See* (Def.'s Motion 2:19-20) (stating "Plaintiff has attempted to plead venue in Oregon, alleging that, 'the Defendant has conducted numerous business transactions in the State of Oregon'). Therefore, Nash had actual notice of the suit.

In conclusion, service of process on Nash was proper on three separate grounds: it complied with both Oregon and California rules, and Nash had actual notice of the suit. Consequently, Nash's motion to quash and strike summons and proof of service should be denied.

III.   Venue

Nash argues that venue should be transferred from the District of Oregon to the Southern District of California.  Although Nash seeks to invoke 28 U.S.C. § 1404(a) to transfer venue, § 1404(a) is reserved for situations in which the transferring court is a proper venue, and venue should be transferred "[f]or the convenience of parties and witnesses."  28 U.S.C. § 1404(a) (2008). However, the thrust of Nash's argument is that the District of Oregon is an improper venue and therefore the case should be transferred to a proper venue.  This situation is governed by § 1406(a), which provides:  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  § 1406(a).  Thus, the court will first determine whether the District of Oregon is a proper venue, before considering whether Nash's motion to transfer should be granted "in the interest of justice."  In this case, the District of Oregon is not a proper venue, and the interest of justice weighs in favor of transfer to the Southern District of California.

A.   The District of Oregon is not a proper venue.

Venue for patent infringement cases is governed by 28 U.S.C. § 1400(b).  28 U.S.C. § 1400(b) (2008).  Section 1400(b) states:  "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Section 1400(b) is the sole and exclusive venue provision for patent infringement cases, and parties are not permitted to circumvent the statute by establishing venue under the general venue statute in 28 U.S.C. § 1391.  *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 229 (1957).

Page -8- FINDINGS AND RECOMMENDATION                                        *{WEP}*

Similarly, the inclusion of additional causes of action does not establish venue under § 1391. *See Hoffacker v. Bike House*, 540 F.Supp. 148, 149 (C.D. Cal. 1981). Once venue is challenged as improper, the plaintiff bears the burden of showing that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Consequently, venue will be proper in the District of Oregon if MTEC has shown that either: (1) Nash resides in Oregon, or (2) Nash committed acts of infringement in Oregon and has a regular and established place of business in Oregon. 28 U.S.C. § 1400(b).

1.   <u>Nash does not reside in Oregon.</u>

Nash does not reside in Oregon. The first prong of § 1400(b) states that venue is proper where "the defendant resides." 28 U.S.C. § 1400(b). It is undisputed that Nash resides in the Southern District of California. Furthermore, Nash's business and home mailing addresses are located in the Southern District of California. Therefore, Nash is a resident of the Southern District of California for venue purposes. Consequently, the first prong of § 1400(b) is not satisfied.

MTEC correctly points out that § 1400(b) incorporates the provision of § 1391(c) for determining the residence of corporate defendants. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed. Cir. 1990). Section 1391(c) provides: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Courts have expanded the definition of corporate defendant in § 1391(c) to include unincorporated associations. *Denver and Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 559-60 (1967). In *Denver*, the Supreme Court held that a labor union could be considered a corporation for purposes of establishing venue. *Id.* Similarly, the Ninth

Circuit held that an unincorporated partnership between two corporations could be considered a corporation for purposes of venue. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841-42 (9th Cir. 1986). Decker Coal Company was a joint venture between Wytana, Inc., a Delaware corporation, and Western Minerals, Inc., an Oregon corporation. *Id.* at 837. Decker had many employees, coal properties, mining equipment and supplies at its mine in Montana. *Id.* at 842. The court concluded that for purposes of venue, Decker was properly considered a corporation with principal place of business in Montana. *Id.*

In this case, Nash is an individual and not a corporation, partnership, or unincorporated association. Nash's company is not incorporated or organized as a partnership or other entity. It appears to be nothing more than a sole proprietorship. Super Soundproofing is simply the name that Nash uses when conducting his sole proprietorship. Although the Ninth Circuit is silent on the matter, at least one court has held that a sole proprietorship is not a "corporation" for purposes of § 1391(c). *Blue Compass Corp. v. Polish Masters of America*, 777 F.Supp. 4, 5 (D. Vt. 1991). Therefore, Nash's residency cannot be established under the provision for corporations found in § 1391(c). Because Nash is a resident of the Southern District of California, venue is not proper in Oregon based on the first prong of § 1400(b).

> 2.    <u>Nash does not have a regular and established place of business in Oregon.</u>

Venue is not proper under the second prong of § 1400(b), because Nash does not have a regular and established place of business in Oregon. In order to establish venue under the second prong of § 1400(b), the district must be one where: (a) the defendant has committed acts of infringement, *and* (b) the defendant has a regular and established place of business. Both of these requirements must be met in order to establish venue. 28 U.S.C. § 1400(b).

Page -10- FINDINGS AND RECOMMENDATION                                      *{WEP}*

Although lacking specificity, MTEC's complaint does allege that Nash is "doing business and committing acts of patent infringement in the United States, including Oregon." (Complaint ¶ 7). Acts of patent infringement include making, using, or selling the allegedly infringing product. 35 U.S.C. § 271. The Ninth Circuit has held that for a sale to constitute an act of infringement in a given district, the sale must have been consummated in that district. *Self v. Fisher Controls Co.*, 566 F.2d 62, 64 (9th Cir. 1977). In *Self*, the court found that venue was not established where orders for the allegedly infringing devices were solicited in the district, because the orders were approved and consummated outside the district. *Id. But see Union Asbestos & Rubber Co. v. Evans Products Co.*, 328, F.2d 949, 952 (7th Cir. 1964) (finding that a "completed sale" is not necessary to establish venue and holding that "two demonstrations of the accused device, added to the systematic and continuous solicitation of orders within the district, constitute, for venue purposes, a sufficient degree of selling to amount to 'infringing sales.'"). MTEC does not allege with any specificity that Nash consummated any sales of the allegedly infringing device in Oregon.

Even assuming that MTEC has established, for venue purposes, that Nash committed acts of infringement in Oregon, there is no indication that Nash has a regular and established place of business in Oregon. In assessing whether a defendant has a regular and established place of business in a district, the court determines whether the defendant does business in that district through a permanent and continuous presence there. *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985). Mere solicitation of orders in a district is not sufficient by itself to establish that a defendant had a regular and established place of business in the district for purposes of establishing venue. *See Schoofs v. Union Carbide Corp.*, 633 F.Supp. 4, 6 (E.D. Cal. 1985). It appears from the record that all of Nash's business operations occurred in the Southern District of California. Therefore, Nash

does not have a regular and established place of business in Oregon.  Consequently, venue is not proper for Nash under the second prong of § 1400(b).

Venue is not proper in the District of Oregon, because MTEC has not sufficiently established venue under either prong of § 1400(b).

B.    Transfer of Venue

Because venue is improper in the District of Oregon, the court must either dismiss the action or transfer it to a proper district, pursuant to 28 U.S.C. § 1406(a).  For the reasons stated below, the court should transfer this case to the Southern District of California.  Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

In order for transfer to be proper, the transferee court must be a proper venue where the case "could have been brought."  28 U.S.C. § 1406(a).  In this case, Nash seeks a transfer to the Southern District of California.  That district is a proper venue under the first prong of § 1400(b), because Nash is a resident there.

To determine whether transfer is "in the interest of justice," courts will generally consider judicial economy, the relative injustice imposed on plaintiff and defendant, whether the statute of limitations has expired, and whether the action would be re-filed if the case were dismissed.  *Grain Millers, Inc. v. Pacific Flexpac, Co.*, 2008 WL 550124, at *2 (D. Or. Feb. 26, 2008).  *See also* William W. Schwarzer et al., *Rutter Group Practice Guide:  Fed. Civ. Pro. Before Trial* ¶ 4:578. Transfer is generally preferred over dismissal.  Schwarzer et al. at ¶ 4:577.  However, dismissal is appropriate when the case was obviously or deliberately filed in the wrong court.  *Wood v. Santa*

Page -12- FINDINGS AND RECOMMENDATION                                    *{WEP}*

*Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983).

In this case, Nash seeks a transfer, not dismissal. Although the statute of limitations has not run and MTEC would be free to re-file in a proper venue, it will better serve judicial economy if MTEC is not forced to re-file the case. Furthermore, there is no indication that MTEC filed suit in Oregon in bad faith. Therefore, this case should be transferred to the Southern District of California, pursuant to § 1406(a).

IV.    Sanctions

Nash has made a motion for sanctions under Rule 11. Nash alleges that MTEC deliberately filed in an improper venue and filed a faulty proof of service. Nash claims that these pleadings were presented in bad faith and were not warranted by existing law, thus violating subsections (1) and (2) of Rule 11(b). However, in this case, the court should not to use its discretion to impose sanctions, because Nash's motion for sanctions was presented improperly and MTEC filed its pleadings in good faith.

Sanctions are governed by Rule 11. Rule 11(b) states, in relevant part, that when presenting a paper to the court:

> an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

FED. R. CIV. P. 11(b). Rule 11(c)(2) states that "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Nash clearly did not comply with this requirement

of Rule 11, because he included a motion to transfer venue and quash service of process with his motion for sanctions.  Therefore, Nash's motion for sanctions is invalid.

Nash also did not comply with Rule 11's safe harbor provision.  Rule 11(c)(2) also states that a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). This court has not set a different time for correction or withdrawal of the complaint.  Nash served MTEC with a copy of the motion on July 16, 2008, but filed the motion with the court on July 22, 2008, only six days after service.  Therefore, Nash did not comply with the safe harbor provision of Rule 11 because he failed to wait twenty-one days after serving MTEC with the motion for sanctions before filing the motion with the court.

However, even if Nash had complied with the requirements for filing a motion for sanctions under Rule 11, the Court should still not impose sanctions, because MTEC's complaint and affidavit of service were filed in good faith.  Contrary to Nash's assertion, it is left to the court's discretion to decide whether to impose sanctions or not.  Fed. R. Civ. P. 11(c)(1).  A court may impose sanctions on a party who signs and files a paper with the court when the paper is "frivolous." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1991) (*en banc*).  A paper is "frivolous" if it is "both baseless and made without a reasonable and competent inquiry." *Id.* However, an argument does not need to be correct to be considered made in good faith. *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986).

In this case, although the court did not end up agreeing with MTEC's choice of venue, there is nothing to suggest that MTEC filed the case in Oregon in bad faith.  Similarly, there is no evidence

Page -14- FINDINGS AND RECOMMENDATION                                          *{WEP}*

that the affidavits of service that MTEC submitted were presented in bad faith. Therefore, the court should not impose sanctions on MTEC's attorneys.

### Conclusion

Defendant's motion to quash and motion to strike summons should be DENIED.

Defendant's motion to transfer venue to the Southern District of California should be GRANTED.

Defendant's motion for sanctions should be DENIED.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than October 7, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 23rd day of September, 2008.

JOHN V. ACOSTA
United States Magistrate Judge